UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__AUG. 0 7 2019__

Kohanna Soto,

                              Plaintiff,

        —v—

United States of America,

                              Defendant.

16-cv-6509 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

   This case arises out of an automobile accident between a vehicle driven by Plaintiff

Kohanna Soto and a postal truck driven by an employee of the United States Postal Service

("USPS"). Plaintiff brings suit against the United States pursuant to the Federal Tort Claims Act

("FTCA") seeking damages for personal injuries sustained in the accident. According to

Plaintiff, the accident and his resulting injuries were caused by the negligence of USPS

employee George Lett, the USPS parcel deliveryman who was operating the postal truck.

   The Court held a bench trial beginning on October 22, 2018, and now issues its findings

of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

After careful consideration of the evidence before it, the parties' written submissions, the

arguments of counsel, and the applicable law, the Court concludes that both parties' negligence

caused the accident, and that Plaintiff is entitled to recover only a portion of the damages sought.

## I.    BACKGROUND

   Plaintiff filed the instant action on August 17, 2016. Dkt. No. 1. After several extensions

to the discovery schedule, discovery closed in July 2018. *See* Dkt. No. 40. On September 21,

1

2018, Plaintiff filed a motion in limine seeking to exclude the testimony of third-party witness Aaron Bishop on the grounds that Plaintiff had been unable to depose Bishop due to his failure to appear at two noticed depositions. *See* Dkt. No. 48. However, Plaintiff later withdrew his objection to Bishop's trial testimony. *See* Dkt. No. 61. No other motions in limine were filed.

In accordance with this Court's individual practices for civil bench trials, the parties submitted direct testimony by sworn affidavit prior to trial. Plaintiff submitted three affidavits: (1) the direct testimony of Plaintiff Kohanna Soto; (2) the direct testimony of Grahme Fischer, P.E., an expert engineer; and (3) the direct testimony of Dr. Jerry Lubliner, an expert orthopedist. Dkt. No. 54, Ex. 2-4. Defendant submitted four affidavits: (1) the direct testimony of George Lett, the driver of the USPS vehicle; (2) the direct testimony of Carl J. Gideon, the Chief Compliance Officer and Claims Counsel of Country-Wide Insurance Company; (3) the direct testimony of Neil S. Roth, M.D., an expert orthopedist; and (4), the direct testimony of David J. Bizzak, an expert engineer. Dkt. Nos. 55-56. These affidavits were admitted into evidence at trial as submitted, with the exception of Mr. Fischer's affidavit. During his trial testimony, Mr. Fischer withdrew paragraphs 14, 16, and 18 of his affidavit, as well as the second and third sentences of paragraph 17. *See* Tr. at 53-56. The affidavit was admitted into evidence with those modifications. *See id.*

During trial, the Court heard live testimony from the following witnesses: (1) Plaintiff; (2) Mr. Lett; (3) Mr. Fischer; (4) Mr. Bizzak; (5) Dr. Roth; (6) Dr. Lubliner;(7) third-party witness Aaron Bishop; and (8) Mr. Gideon. In addition, both parties submitted documentary exhibits. Jointly, the parties submitted a copy of the "Claim for Damage, Injury or Death" that Plaintiff submitted to the U.S. government following the accident, photographs taken by Country-Wide Insurance, and medical records. *See* Dkt. No. 49. Plaintiff also moved into

evidence additional photographs and medical records. *See id.* Defendant submitted a Country-Wide Insurance Automobile Accident Report and photographs attached to the affidavit of Mr. Bizzak. *See id.*

After the bench trial, the parties submitted updated proposed conclusions of fact and conclusions of law. *See* Dkt. Nos. 70; 83; 84.

## II.     FINDINGS OF FACT[1]

The following section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1). The Findings of Fact are drawn from the witness testimony submitted by affidavit, witness testimony given at trial, and the parties' trial exhibits.

### A.  The April 8, 2013 Accident

#### 1.  Credibility Determinations

Having heard testimony by Plaintiff, Mr. Lett, and Mr. Bishop concerning the facts surrounding the accident, the Court makes the following credibility determinations.

First, the Court finds that Plaintiff's testimony lacked credibility. Plaintiff testified as follows:

> In order to get to the accident location, I drove from Bruckner Expressway to Hunts Point and ended up on Unionport Road. I travelled on Unionport Road to its intersection with East Tremont and stopped at a red light. After the light changed, I made a right turn on East Tremont and traveled in the right lane on East Tremont up until the accident occurred at the intersection of East Tremont and Purdy Street....I was traveling at approximately 25-30 miles per hour while driving on East Tremont and never changed speed....I continued to approach [the intersection] at 25-30 miles per hour and when I was about a car and a half distance away from the intersection, the post-office truck suddenly and without warning turned left and cut in front of me.

Dkt. No. 54-2 ¶¶ 8, 13-14. As an initial matter, there is ample evidence in the record that Plaintiff was travelling faster than 30 miles per hour prior to the collision: the testimony of Mr.

---

[1] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

Lett and Mr. Bishop, the conclusions of both engineering experts, and the Country-Wide Insurance Automobile Accident Report all indicate that Plaintiff was speeding.

In addition, Plaintiff's version of events is directly contradicted by the testimony of Mr. Bishop, a bystander who witnessed the collision. Mr. Bishop testified persuasively that he observed Plaintiff's car leave a muffler shop on East Tremont Avenue travelling west, then make a U-turn and return on the same road travelling east. *See* Tr. at 247-48. Mr. Bishop further testified that Plaintiff was travelling faster than surrounding traffic and appeared to increase his speed as he approached the intersection where the accident occurred. *See* Tr. at 249; 260; 263. The Court found Mr. Bishop's testimony to be credible and particularly persuasive because Mr. Bishop has no interest in the outcome of this litigation. In light of this contradictory persuasive evidence, the Court does not credit Plaintiff's testimony.

On the other hand, the Court found Mr. Lett's testimony to be generally credible. Mr. Lett testified that he was travelling westbound on East Purdy Avenue when he stopped at the intersection of East Tremont Avenue and Purdy Street in preparation for making a left turn. *See* Dkt. No. 55-1 ¶¶ 9-12. Though he "had a clear view of the oncoming traffic," Mr. Lett did not see Plaintiff until just prior to the collision, when he saw a car "that was traveling so fast that it looked like a blur." *Id.* ¶¶ 12; 15. Mr. Lett's testimony contained specific factual details, was internally consistent, and was generally corroborated by the eyewitness account of Mr. Bishop and the expert testimony of Mr. Bizzak.

With respect to the expert testimony, the Court finds that Plaintiff's witness Mr. Fischer was less credible than Defendant's witness Mr. Bizzak. First, at trial Mr. Fischer withdrew all portions of his direct testimony that indicated that Plaintiff was not speeding prior to the collision based on his review of an additional photograph of the accident site. *See* Tr. at 53-36. Despite

4

acknowledging that Plaintiff was speeding, Mr. Fischer maintained his position that "whether Mr. Soto was traveling at 25-30 miles per hour, or at 35 miles per hour, or even at 50 miles per hour, he still would have been unable to avoid the collision. The truck's action of cutting across Soto's path did not provide Mr. Soto with enough time to alter the motion of his vehicle such that a collision could have been avoided." Dkt. No. 54-3 at ¶ 24.

The Court is unconvinced by this conclusion. At Mr. Bizzak points out, the determination that Plaintiff could not have avoided the accident rests on the assumption that the time required for Mr. Lett to travel from the start of his turn to the point of impact was 1.8 seconds, but Mr. Fischer's testimony does not indicate how he arrived at this number. *See* Dkt. No. 56-2 ¶ 41; Dkt. No. 54-3. Moreover, based on Mr. Bizzak's uncontested analysis of the skid marks at the scene of the accident, Plaintiff started braking at least 40 feet from the point of impact. *See* Dkt. No. 56-2 at 28. By Mr. Bizzak's analysis, the methodology of which was fully explained in his direct testimony, Plaintiff would have been able to bring his car to a complete stop by braking in approximately 38 feet if his starting speed had been 30 miles per hour. *Id.* ¶¶ 32-33. This conclusion, which the Court finds persuasive, directly contradicts Mr. Fischer's unexplained determination that Plaintiff would not have been able to avoid the collision even if he had been travelling at a slower speed. Thus, the Court does not credit Mr. Fischer's testimony, but finds Mr. Bizzak's testimony to be credible.

### 2. Factual Determinations

With the above credibility determinations in mind, the Court finds that the following relevant facts concerning the accident have been established by a preponderance of the evidence.

On April 8, 2013, a USPS vehicle operated by Mr. Lett collided with a 1998 Honda Civic driven by Plaintiff at the intersection of East Tremont Avenue and Purdy Street in the Bronx,

New York. Dkt. No. 49 ¶¶ 8-9. At the time of the collision, Mr. Lett was acting in the course of his Government employment. *Id.* ¶ 8. East Tremont Avenue is a two-way street with multiple lanes of traffic in both directions. Dkt. No. 54-2 ¶ 5; Dkt. No. 55-1 ¶ 8.

The weather on April 8, 2013 in the Bronx was fine. Dkt. No. 54-2 ¶ 7. At approximately 12:00 p.m. on the day in question, Plaintiff approached the intersection travelling eastbound on East Tremont Avenue, where the traffic light was green. Dkt. No. 54-2 ¶ 11; Tr. at 249. Prior to the accident, Plaintiff was travelling at approximately 40-45 miles per hour, above the speed limit of 30 miles per hour. Dkt. No. 56-2 ¶ 3. Plaintiff was travelling faster than the surrounding traffic, and he increased his speed as he approached the intersection. Tr. at 249; 260; 263.

The collision occurred as Mr. Lett was making a left turn from East Tremont Avenue, where he had been traveling westbound, onto Purdy Street. Dkt. No. 49 ¶ 10. Mr. Lett stopped in the intersection before making his left turn and looked straight ahead toward oncoming traffic. Tr. at 115. Mr. Lett did not see Plaintiff's vehicle until after he already entered his turn. Dkt. No. 55-1 ¶ 15. Approximately 40 feet from the site of the collision, Plaintiff applied his brakes and began to skid. Dkt. No. 56-2 ¶ 3. Thereafter, Plaintiff's automobile collided with the passenger side of the USPS postal truck in the intersection. *Id.* Had Plaintiff been travelling at or below the speed limit of 30 miles per hour, he would have been able to avoid the collision. *Id.*

## B. Plaintiff's Injuries

### 1. Credibility Determinations

As discussed above, Plaintiff's credibility as to the facts surrounding the accident was significantly undermined by directly contradictory evidence. The Court similarly discounts Plaintiff's testimony concerning his subjective experience of his injuries based on the conclusion

that Plaintiff is not a credible witness. For example, though Plaintiff testified that he experiences constant back pain which affects his daily life, *see* Dkt. No. 54-2 ¶ 27, this testimony was undermined by expert witness Dr. Roth, who explained persuasively his conclusion that Plaintiff "made deliberate attempts to exaggerate his low back symptoms," Dkt. No. 56-1 ¶ 43.

In general, the Court finds that both medical experts were credible. However, while Dr. Roth's analysis relied in large part on independent observations and medical tests, Dr. Lubliner's testimony includes many statements regarding Plaintiff's own assessment of pain. *See generally* Dkt. No. 54-4 (stating, for example, that Plaintiff "reported that he cannot do heavy lifting, he cannot sit for long period of time, and he cannot drive for long period of time"). Because the Court finds Plaintiff to be not a credible witness, to the extent that Dr. Lubliner's testimony relies on Plaintiff's statements, the Court declines to credit that testimony.

### 2. Factual Determinations

In light of the foregoing credibility determinations, the Court finds that the following facts have been established by a preponderance of the evidence.

On April 8, 2013, Plaintiff was taken to Jacobi Medical Center via ambulance, Dkt. No. 49 ¶ 13, where he was treated for traumatic acute injuries to his right femur and left wrist, Dkt. No. 54-2 ¶ 18; Dkt. No. 54-4 ¶ 6. At Jacobi Medical Center, Plaintiff was diagnosed with a femoral shaft fracture, which required surgery. Dkt. No. 54-4 ¶ 8. The surgery involved a procedure known as open reduction internal fixation, which means that a rod was inserted into Plaintiff's led. *Id.* ¶ *8.* In addition, hospital records indicate that Plaintiff also experienced a nondisplaced fracture of the ulnar styloid, a bone in the wrist. *Id.* ¶ 6. Plaintiff was discharged from the hospital on April 15, 2013. *Id.* ¶ 9. Thereafter, Plaintiff underwent physical therapy for several months. Dkt. No. 56-1 ¶ 21. Plaintiff's leg was in a cast for approximately six months,

he used a walker for about four to six months, and he had limited mobility for approximately one year. *Id.* ¶ 20.

As of May 1, 2018, Plaintiffs injuries from the accident had fully healed. Dkt. No. 56-1 ¶¶ 4, 52, 62. Plaintiff's range of motion in his right hip, right knee, left wrist, and lumbar spine were normal. *Id.* ¶¶ 39-52. Though Plaintiff does have a minor leg length discrepancy, this discrepancy does not affect his quality of life. *Id.* ¶¶ 49-50. Similarly, Plaintiff exhibits heterotopic ossification in his right hip, but this ossification does not require any treatment and should not impact Plaintiff's range of motion. *Id.* ¶¶ 53-58.

## III.  CONCLUSIONS OF LAW

### A. Legal Standards

Under the FTCA, the United States is liable for "personal injury or death cause by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, New York law governs this FTCA action. *See, e.g., Makarova v. United States*, 201 F.3d 110, 114 (2d Cir.) ("Under the FTCA, courts are bound to apply the law of the state...where the accident occurred.").

To establish negligence under New York law, a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir.2013) (quoting *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531 (N.Y. 1981)). Per New York's comparative negligence statute, a plaintiff's own contributory negligence does not bar recovery, but "the amount of damages otherwise recoverable [is] diminished in the proportion which the

culpable conduct attributable to the claimant...bears to the culpable conduct which caused the

damages." N.Y. C.P.L.R. 1411. In other words, New York has adopted a "pure comparative

negligence model." *O'Brian v. Marriot Intern., Inc.*, No. 04-CV-3369(VVP), 2006 WL 1806567

at *1 (E.D.N.Y. June 29, 2006).

New York courts have determined that a violation of the New York Vehicle and Traffic

Law ("VTL") constitutes negligence per se. *See, e.g., Packer v. Mirasola*, 681 N.Y.S.2d 559

(N.Y. App. Div. 1998). Several provisions of the VTL are relevant to the Court's decision here.

Under VTL § 1141, "[t]he driver of a vehicle intending to turn to the left within an intersection

or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching

from the opposite direction which is within the intersection or so close as to constitute an

immediate hazard." N.Y. Veh. & Traf. Law § 1141. VTL § 1180(a) provides that "[n]o person

shall drive a vehicle at a speed greater than in reasonable and prudent under the conditions and

having regard to the actual and potential hazards then existing." N.Y. Veh. & Traf. Law §

1180(a). Subsection (e) of VTL § 1180 further provides that "[t]he driver of every vehicle shall,

consistent with the requirements of subdivision (a) of this section, drive at an appropriate

reduced speed when approaching and crossing an intersection." N.Y. Veh. & Traf. Law §

1180(e). Finally, per VTL § 1111(a)(1), vehicular traffic "facing a steady circular green signal

may proceed straight through or turn right or left," but must "yield the right of way to other

traffic lawfully within the intersection." N.Y. Veh. & Traf. Law § 1111(a)(1).

Courts applying New York law have also articulated several additional principles that

bear on the potential negligence of drivers involved in a traffic accident. First, "a driver is

required to see that which through proper use of his or her senses he or she should have seen."

*Allison v. Rite Aid Corp.*, 812 F. Supp. 2d 565, 570 (S.D.N.Y. 2011) (quoting *Vainer v. DiSalvo*,

914 N.Y.S. 2d 236 (N.Y. App. Div. 2010). In addition, "a driver who has the right-of-way is entitled to anticipate that the other motorist will obey the traffic law requiring him or her to yield." *Vainer*, 914 N.Y.2d at 236. Nevertheless, a driver with the right-of-way "has a duty to use reasonable care to avoid a collision." *Maliza v. Puerto-Rican Transp. Corp.*, 854 N.Y.S. 2d 763, 765 (N.Y. App. Div. 2008). Finally, "there can be more than one proximate cause of an accident." *Cooley v. Urban*, 767 N.Y.S.2d 546, 546 (N.Y. App. Div. 2003).

## B. Liability of Plaintiff and George Lett

The Court concludes that, under New York law, both parties were negligent, and the negligence of both contributed to the accident. First, the Court finds by a preponderance of the evidence that Mr. Lett failed to exercise reasonable care in turning left, and that this failure was a proximate cause of the accident. There is no dispute that Mr. Lett had a duty to "yield the right of way to any vehicle approaching from the opposite direction which is within the intersection *or so close as to constitute an immediate hazard*." N.Y. Veh. & Traf. Law § 1141. (emphasis added). Based on the facts found above, the Court concludes that Mr. Lett failed to do so, which constitutes negligence per se. *See Yelder v. Walters*, 883 N.Y.S. 2d 290, 292 (N.Y. App. Div. 2009) ("[T]he undisputed fact that plaintiff was unable to drive through the intersection without being struck by defendant's vehicle is compelling evidence of the immediate hazard created by defendant's vehicle as it approached the intersection.") (quoting *Le Claire v. Pratt*, 704 N.Y.S. 2d 354, 355 (N.Y. App. Div. 2000)). The Court also finds that this failure was a "substantial" cause of the collision, and therefore was a proximate cause of Plaintiff's injuries. *Derdiarian v. Felix Contr. Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980).

However, New York law recognizes that an accident can have more than one proximate cause. *See Cooley*, 767 N.Y.S.2d at 546. Plaintiff, too, violated a duty by failing to exercise

reasonable care to reduce his speed to an appropriate rate and to avoid a collision. In the factual circumstances of this case, this failure was also a proximate cause of the accident because the speed Plaintiff was travelling was a substantial causative factor of the crash.

For these reasons, though Plaintiff has established by a preponderance of the evidence both that Mr. Lett was negligent and that his negligence caused Plaintiff's injuries, the Court finds that Plaintiff's negligence was also a proximate cause of the collision. Thus, Plaintiff's recovery will be limited to a portion of total damages found by the Court.

### C. Apportionment of Liability

The Court turns now to the question of apportionment of liability. In apportioning fault for the accident, the Court "will consider the duties owed by each of [the] parties and the question of whether the conduct of that party deviated from the duty that he owed, and weigh the relative degree of fault of each, expressed as a percentage of the total fault of both drivers." *Saint v. United States*, 483 F.Supp.2d 267, 279 (E.D.N.Y. 2007).

With respect to Mr. Lett's share of the responsibility, the Court notes that it is the duty of a driver turning left to yield to a straightaway driver, who has the right of way. It is worth noting that, had there been no evidence of Plaintiff's speeding, Mr. Lett would be deemed entirely at fault for the collision under New York law. *See Maloney v. Niewender*, 812 N.Y.S.2d 585, 586 (N.Y. App. Div. 2006). Here, although Plaintiff was speeding, Mr. Lett nevertheless had the duty to "see that which through proper use of his...senses he...should have seen" and proceed to turn only when no automobile was so close as to constitute a hazard. *Allison*, 812 F. Supp. 2d at 570. Moreover, Mr. Lett has no explanation for his inability to see Plaintiff before deciding to turn left. Accordingly, Mr. Lett is substantially liable for the collision.

On the other hand, the Court also finds that Plaintiff deviated from the standard of reasonable care to a significant degree. Importantly, Plaintiff was travelling at least 10 miles per hour above the speed limit and did not moderate his speed when approaching the intersection. Though the weather was fine and Plaintiff's speed was not exceedingly high, Plaintiff was travelling on multi-lane street with other vehicles and had a duty to use reasonable care to avoid a collision. *Cox v. Nunez*, 805 N.Y.S.2d 604, 605 (N.Y. App. Div. 2005) ("A driver with the right-of-way has a duty to use reasonable care to avoid a collision."). In addition, there is evidence that had Plaintiff been travelling at or below the speed limit, the accident could have been avoided. Thus, the Court concludes that Plaintiff is significantly responsible for the accident, though to a slightly lesser extent than is Mr. Lett.

Based on the above analysis, the Court apportions liability for the collision as follows: Plaintiff is 40% responsible, and Mr. Lett is 60% responsible.

## IV. DAMAGES

Under New York law, damages in personal injury actions "are compensatory in nature, the measure of which consists of pain and suffering, mental suffering and anguish, loss of earnings, reasonable cost of medical treatment, physical disability and the permanence thereof, and other expenses incurred because of the injury." *Homen v. United States*, No. 00-cv-3883(RWS), 2002 WL 844347, at *6 (S.D.N.Y. May 7, 2002). Plaintiff bears the burden of proof to present to the Court "a proper basis for ascertaining the damages he seeks to recover." *Yarrow v. United States*, 309 F. Supp. 922, 931 (S.D.N.Y. 1970). The Court can look to New York state "[j]ury verdicts and judicial opinions approving or disapproving them" as guidance in determining an appropriate award. *Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 750 (2d Cir. 1984).

Plaintiff requests an award of $1 million in damages for past and future pain and suffering. However, as discussed above, Plaintiff has not shown by a preponderance of the evidence that the injuries he sustained in the accident continue to cause him pain. Accordingly, the Court will award damages for past pain and suffering only. It is undisputed that Plaintiff suffered a fractured femur that required open reduction internal fixation surgery—in other words, a metal rod was inserted into Plaintiff's leg to support the fractured bone. The Court also finds that Plaintiff's wrist was fractured in the accident. Plaintiff's testimony, corroborated by medical records, demonstrates that Plaintiff's leg was in a cast for approximately six months, during which time he had limited mobility and required assistance to perform basic tasks.

Based on these facts and considering comparable cases, the Court determines that Plaintiff would be entitled to $150,000 for past pain and suffering. *See, e.g.*, *Vasquez v. City of New York*, 748 N.Y.S.2d 140 (N.Y. App. Div. 2002) (approving award of $250,000 for past pain and suffering for fractured tibia and fibia and a tear of the interosseous membrane, which required open reduction internal fixation surgery); *Ruiz v. New York City Tr. Auth.*, 843 N.Y.S.2d 40 (N.Y. App. Div. 2007) (reducing award for past pain and suffering where plaintiff fractured her ankle and required open reduction internal fixation surgery to $100,000, by stipulation); *Lowenstein v. Normandy Group, LLC*, 859 N.Y.S.2d 29 (N.Y. App. Div. 2008) (approving award of $300,000 for past pain and suffering where plaintiff suffered an ankle and shoulder fracture, the first of which required surgery, and was unable to return to work for 18 months).

## V.   CONCLUSION

The Court finds that Plaintiff has proven by a preponderance of the credible evidence that the automobile accident that occurred on April 8, 2013, was caused by the negligence of both drivers. Specifically, the Court concludes that Plaintiff is 40% responsible for the collision, and

Defendant is 60% responsible. By this apportionment, Plaintiff is entitled to damages in the amount of $90,000.[2]

The Clerk of the Court is respectfully directed to enter judgment in favor of Plaintiff for $90,000.

SO ORDERED.

Dated: July ~~7~~, 2019
      New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[2] Under the FTCA, the United States is not liable for pre-judgment interest. *See* 28 U.S.C.A. § 2674.